UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

|                       |   |                       |
|-----------------------|---|-----------------------|
| Calvin Keys, Jr.,     | ) |                       |
|                       | ) |                       |
| Plaintiff,            | ) |                       |
| v.                    | ) | CIVIL NO. 1:04CV214   |
| Foamex L.P.,          | ) |                       |
|                       | ) |                       |
| Defendant.            | ) |                       |

**OPINION AND ORDER**

This matter is before the court on defendant's, Foamex L.P. ("Foamex"), motion for

summary judgment, filed on May 11, 2005.  The plaintiff, Calvin Keys, Jr.  ("Keys"), responded

to the motion on June 27, 2005.  Foamex filed its reply on July 8, 2005.

**FACTUAL BACKGROUND**

**I. Foamex Substance Abuse Policy**

Foamex operates a foam manufacturing facility in Fort Wayne, IN. Foamex employs 191

people in its Fort Wayne facility. Christopher R. Welbaum ("Welbaum") is the Human Resource

Manager for Foamex and was responsible for the hiring and ultimate termination of Keys.

Foamex distributes two substance abuse policies to its employees: a corporate-wide policy and a

local policy for Fort Wayne employees. The policies are similar in context. The Fort Wayne

policy prohibits "reporting to work under the influence of intoxicating beverages, narcotics,

barbiturates, or other drugs or controlled substances."

Violation of Foamex's drug policy is grounds for immediate discharge. Employees may

be subject to medical examination or test "to determine if there is a presence of alcohol or drugs

in the employee's body" if 1)the employee  is "involved in a serious or lost time on-the-job

accident" or 2) if an employee's "on-the-job behavior indicates that he or she might be under the

influence of alcohol or drugs." (Defense, *Exhibit A)*.

Foamex terminated at least two employees in 2003 for testing positive for a controlled substance in violation of the Drug Free Workplace Policy ("Drug Policy"). The two employees terminated were Bob Bloemaker ("Bloemaker") and Curtis Westbrook ("Westbrook"). Bloemaker is a White male who Foamex had tested after an on-the- job accident. Bloemaker tested positive for marijuana and was subsequently terminated. The other employee terminated was Curtis Westbrook, an African-American male, who was a supervisor at the time of his termination. Welbaum had Westbrook tested for drugs because he suspected Westbrook of being under the influence of a controlled substance while at work. Westbrook tested positive for marijuana and was terminated. Prior to the termination of Westbrook, Bloemaker, and Keys, Welbaum had heard rumors of the three men's possible drug usage.

## II. Keys' Drug Test

Welbaum made the decision to hire Keys. Keys is an African-American male, aged forty-six. Foamex hired Keys on February 11, 2002. Keys had been recommended by Keys' father. Keys' father ran Keys' Search Group, an affirmative action and headhunter program. Keys' father had a previous business relationship with Welbaum. Foamex was a client of Keys' Search Group.  While employed by Foamex, Keys was given a copy of the Drug Policy. Keys was aware of the policy and knew that Foamex could require him to submit to a drug test.

On April 1, 2003, Keys was involved in a dispute with two co-workers, Juan Lopez and Tony Romero. During the course of the dispute Romero threatened to call the supervisor. On April 2, 2005 Welbaum received information from Mark Thomas, a supervisor, and two other employees, Tony Romero and Garth Haslett, which caused Welbaum to suspect that Keys may

have been under the influence of drugs on April 1, 2003. The report stated that Keys was not

cooperative with other employees, did not want to work, and was lackadaisical and did not

comply with what he should have been doing. Thomas reported that Keys' behavior was very

odd and out of the ordinary.

Prior to April 2, 2003, Welbaum had never heard of any reports that Keys had acted in a

similar manner. Welbaum determined that Keys should be tested for drugs based on his

suspicion that Keys was under the influence of drugs on April 1, 2003. Welbaum did not see

Keys act in this manner himself, but relied on the report of Thomas and the other two employees.

On April 2, 2003, Keys was escorted to RediMed where he was tested. A RediMed staff member

informed both Keys and Foamex that Keys had tested positive for marijuana. Keys admitted that

he had smoked marijuana within a month of the April 2, 2003 test. Welbaum made the decision

to terminate Keys for violating the Drug Policy.

## APPLICABLE LEGAL STANDARD

"Summary judgment is proper only if 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1031 (7th Cir. 1998)

(quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists only if 'the evidence is

such that a reasonable juror could return a verdict in favor of the non-moving party.' *Monotype

Imaging Inc v. Bitstream, Inc,* 2005 U.S. Dist. 7410, 7415 (2005) (quoting *Anderson v. Liberty

Lobby, Inc.* 477 U.S. 242, 248; 106 S. Ct. 2502,2510, 91 L.Ed.2.d. 202 (1986) ) The party

seeking summary judgment has the burden to prove that no issue of material fact exists. *Id.* at

7416 *(quoting Celotex v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548,2552, 91 L.Ed.2d. 256

(1986)).

While the moving party "always bears the initial responsibility of informing the district

court of the basis for its motion and identifying those portions of the record, if any, which it

believes demonstrate the absence of a [genuine issue of] material fact, there is nothing in Rule 56

that requires a moving party to negate an essential element of an opponent's claim for which the

opponent will bear the ultimate burden at trial." *Bank of Illinois v. Allied Signal Safety Restraint*

*Sys.,* 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 3178 (1986)).

Rather, the standard for granting summary judgment requires the district court to grant summary

judgment if the record before us "could not lead a rational trier of fact to find for the non-moving

party." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

The burden is therefore on the non-movant to set forth "specific facts showing that there

is a genuine issue for trial." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998) (quoting

Fed. R. Civ. P. 56(e)). "In determining whether a genuine issue of material fact exists, courts

must construe all facts in the light most favorable to the non-moving party and draw all

reasonable and justifiable inferences in favor of that party." *Debs v. Northeastern Illinois Univ.*,

153 F.3d 390, 394 (7th Cir.1998). Substantive law determines which facts are "material"; that is,

those facts which might affect the outcome of the suit under the governing law. *See McGinn v.*

*Burlington Northern R.R. Co.*, 102 F.3d 295, 299 (7th Cir. 1996). Consequently, a dispute over

irrelevant or unnecessary facts does not preclude summary judgment. *See Hardin v. S.C.*

*Johnson & Sons, Inc.*, 167 F.3d 340, 344 (7th Cir.1999).

4

The non-moving party may not rest on the allegations of the pleadings in opposing a

motion for summary judgment. *See Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535,

540 (7th Cir. 1998). Rather, the non-moving party must produce some evidence sufficient to

show that a genuine issue of material fact exists. "Furthermore, a 'party needs more than a

scintilla of evidence ... to defeat summary judgment.'" *Adusumilli v. City of Chicago*, 164 F.3d

353, 361 (7th Cir.1998) (quoting *Senner v. Northcentral Technical College*, 113 F.3d 750, 757

(7th Cir. 1997)). Thus, a summary judgment determination is essentially an inquiry as to whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.

## DISCUSSION

A plaintiff bringing a claim under Title VII can survive summary judgment by raising a

genuine issue of material fact that the adverse employment action was motivated by a

discriminatory purpose. A plaintiff can prove discrimination through either the direct method or

an indirect method, known as the *McDonnell Douglas* burden-shifting test. *Rozskowiaz v.

Village of Arlington Heights,* 2005 WL 1593442, 3 (7th Cir, (Ill.)) *See Also McDonnell Douglas

Corp. v. Green,* 411U.S. 792, 802-803, 93 S. Ct. 1817, 1824-25, 36 L.Ed. 2d 668(1973).

Under the direct method, a plaintiff must show through direct or circumstantial evidence

that race motivated the adverse employment action.  *Rozskowiaz,* 2005 WL 1593442, 3. *(citing

Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061.)* The indirect method or *McDonnell Douglas*

analysis requires the plaintiff make a *prima facie* case of discrimination. To make the *prima

facie* case of discrimination under the *McDonnell-Douglas* analysis, the plaintiff must show 1)

he belongs to a protected class; 2) his performance met his employer's legitimate expectations;

3) he suffered an adverse employment action; and 4) similarly situated persons not in his protected class received more favorable treatment. *Id.* (Citing *McDonnell-Douglas,* 411 U.S. at 804.)

Even if Keys satisfies all four prongs of the *McDonnell-Douglas* analysis and establishes a *prima facie* case of racial discrimination, the establishment of the *prima facie* case only creates a "legally mandatory, rebuttable presumption" that Foamex unlawfully discriminated against Keys. *O'Conner v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311-12, 116 S. Ct. 1307, 134 L.Ed.433 (1996)(quotation omitted.) Once this presumption has been created, the burden shifts to Foamex to articulate a non-discriminatory reason for the employment decision. *See Id.* at 311. If Foamex is able to satisfy this burden, the *McDonnell-Douglas* presumption drops from the case and is no longer relevant. *See Baron v. City of Highland Park,* 195 F.3d 333,339 (7th Cir.1999).

Once Foamex has come up with a legitimate, nondiscriminatory reason for its decision to terminate Keys, Keys must show evidence that Foamex's reason for the adverse employment action is merely pretext. *See Richter v. Hook-SupeRX, Inc.,* 142 F.3d1024, 1029 (7th Cir.1998).

**I. Racial Discrimination: Drug Test**

Keys first claims that Foamex's drug testing violates Title VII. Keys does not present any direct evidence to indicate that the drug testing was racially motivated, therefore the facts must be analyzed using the *McDonnell-Douglas* analysis.

The first step in the *McDonnell-Douglas* analysis requires that Keys be a member of a protected class. It is undisputed that Keys is an African-American male, which makes him a member of a protected class. The second step in the analysis requires that Keys performed his

6

job to Foamex's satisfaction. The defense does not argue that Keys was not a satisfactory

employee.      The third step in the analysis requires an adverse employment action. Here, Keys

claims  that having to submit to drug testing was an adverse employment action. An adverse

action can include more than termination. *Stockett v. Muncie, Ind Transit Sys.,* 221 F.3d

997,1001 (7th Cir. 2000).   The Seventh Circuit has recognized that conditions of employment

that are designed to harass or humiliate because of race, such as suspicion-based drug testing,

can be an adverse employment action.  *Stockett v. Muncie, Ind Transit Sys.,* 221 F.3d 997, 1001

(7th Cir.  2000). Therefore, if a suspicion-based drug test is not performed in a "routine fashion

following the regular and legitimate practices of the employer" it may be an actionable adverse

employment action under Title VII.  *Id.* at 1001-1002. (Citing *Landon v. Northwest Airlines,*

*Inc.,* 72 F.3d 620, 624-625 (8th Cir. 1995)). However, *Stockett* further noted that drug-testing that

is performed in a "routine fashion" pursuant to a published drug policy and was not meant to

harass is not an adverse employment action. *Stockett,* 221 F.3d at 1002.

Here, like *Stockett,* the employer had a published drug policy, observed suspicious

behavior, and requested a drug test pursuant to the drug policy. Foamex has the practice of

testing employees for drugs who it reasonably suspects is under the influence of drugs while at

work. In the past, Foamex has tested employees for drugs that it reasonably suspected of drug

use while at work, two of which were terminated in 2003 along with Keys. Foamex's request for

Keys to submit to a drug test was not meant to harass him based on his race. It is undisputed that

neither Keys nor his co-workers knew why Keys was called into the office or subsequently

where he was going when he was driven to RediMed for the drug test. Because Foamex tests its

employees in a "routine fashion following its regular and legitimate practices," the drug test was

not an adverse employment action.

It is necessary that all elements be satisfied under the *McDonnell-Douglas* analysis. As stated above, Foamex's request for Keys to submit to a drug test does not constitute an adverse action because it was done in a "routine fashion following the regular and routine practice of the employer." *Stockett,* 221 F.3d at 1002. Therefore, there is no reason to analyze whether or not similar situated persons not in the protected class were treated more favorably. However, Keys does not satisfy this element either. Keys compares himself to other employees not in the protected class who were not subject to a suspicion-based drug test. Of those employees only one, Jason Moreno ("Moreno"), was suspected of being under the influence while at work and was not required to take a drug test.

Moreno was suspected of being under the influence of alcohol while at work and was sent home by a supervisor. Welbaum was not made aware of the incident for two days. Because Welbaum was not aware of the situation on the day in question, he was unable to require Moreno to undergo testing for alcohol, which does not stay in the body as long as drugs. However, Welbaum did warn Moreno if it happened again that it would be cause for immediate termination.

Although it may appear that Moreno, who is not in the protected class, was treated more favorably, there is not enough evidence to show that it was based on race. It is more likely than not that Moreno's seemingly favorable treatment is because of the inability of Welbaum to accurately test Moreno for alcohol in his system rather than on the basis of his race. The Seventh Circuit has noted that "not every perceived unfairness in the workplace can be ascribed to be racially motivated just because the complaining party belongs to a racial minority." *Beamon v.*

*Marshall & Ilsley Trust Co.,* 411 F.3d 854,863 (7th Cir. 2005) (citing *Malhotra v. Cotter & CO.,* 885 F.2d 1305, 1308 (7th Cir. 1989).) There must be a "sufficient connection to race" before the adverse action can reasonably construed as being motivated by the defendant's hostility to plaintiff's race. *Id.* at 863-864.(citing *Luckie v. Ameritech Corp.*, 389 F. 3d 708, 713 (7th Cir. 2004).

Here, there is not a sufficient connection between Keys' race (African-American) and the alleged adverse employment action (the drug test).  Keys can only compare himself to one other employee.  The other employees who Keys claims were treated more favorably were not suspected by Foamex as being under the influence of drugs while at work. For example, Keys claims that Ms. Martinez, who was arrested during a drug raid, should have been under reasonable suspicion for a drug test. However, this assessment is misguided. Foamex's drug policy only states that if you are under reasonable suspicion of drug use at work that you can be tested. Ms. Martinez's action, unlike Keys', was not observed at Foamex, but was an activity that took place outside of work. Keys on the other hand was observed by a supervisor acting "odd" while at work. It was because of Keys' unusual behavior at work that he was subjected to a drug test pursuant to Foamex's published Drug Policy. Therefore, Keys fails to satisfy the fourth requirement of the *McDonnell-Douglas* analysis, which requires that similar situated persons not in the protected class were treated more favorably.

**II. Racial Discrimination: Termination**

Keys also claims that his termination from Foamex was based on racial discrimination. Similar to the analysis of the drug test, Keys does not put forth any direct evidence that his termination was based on race. Therefore, we must again analyze the claim under the

*McDonnell-Douglas* test. As with the previous analysis, the first two requirements are satisfied: Keys is a member of a protected class; and it is undisputed that he was performing his job to Foamex's satisfaction. Keys also satisfies the third requirement because his termination is an adverse employment action.

The fourth requirement, that similarly-situated employees not in the protected class were treated more favorably, is not met. Keys attempts to show that because Foamex can not prove that he was under the influence of drugs while at work (adrug test only tests for the presence of the substance, but can not determine when it was taken) that it can also not prove that he violated the Drug Policy by being at work under the influence. Therefore, Keys incorrectly compares himself to other employees not at work under the influence who were not fired. However for the purpose of the *McDonnell -Douglas* analysis, similarly-situated employees would be those who also tested positive for drugs or alcohol. Keys does not put forth evidence that other employees who tested positive for drugs or alcohol were not terminated. Therefore, similarly situated employees not in the protected class were not treated more favorably than Keys.

In addition, even if Keys had a prima facie case of race discrimination, the *McDonnell-Douglas* analysis would then shift the burden on Foamex to show a non-discriminatory reason for the adverse employment action. *O'Conner,* 517 U.S. at 311. Foamex states that it terminated Keys for violating the drug policy when he tested positive for marijuana, which is a legitimate non-discriminatory reason. Foamex states that its decision was not discriminatory and that its policy is a "Zero Tolerance" policy to protect the safety of its employees. Because Foamex provided a legitimate non-discriminatory reason for the discrimination, the burden shifts to Keys to show that the reason given is pretext for discrimination. *Richter v. Hook-SupeRX, Inc.,* 142

F.3d1024, 1029 (7ᵗʰ Cir.1998)**.**

Keys claims that Foamex's reason is pretext because the policy on its face only prohibits an employee from being under the influence of drugs or alcohol while at work. Keys claims that because Foamex can not prove that he was under the influence while at work, that the real reason he was terminated was based on his race. Keys is again incorrect in his understanding of pretext. "Pretext" is "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'"*Richter v. Hook-SupeRX, Inc.,* 142 F.3d1024, 1030 (quoting *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7ᵗʰ Cir. 1996)). Even if Keys was right that the drug policy is not a "Zero tolerance" policy and that Foamex must prove that he was under the influence of drugs while at work, Foamex's mistaken belief in the meaning of its policy would still not be a pretext for discrimination. Thus, "[t]he issue of pretext does not address the correctness or desirability of [the] reasons offered for employment decisions. Rather it addresses the issue of whether the employer honestly believes in the reasons it offers." *Richter,* 142 F.3d at 1029.  Foamex honestly believes that it correctly applied its Drug Policy when it terminated Keys for testing positive for marijuana after a suspicion-based drug test.

In the summary judgment context, "the ultimate burden is on [the plaintiff] to show that there is some genuine issue of material [fact] as to whether the stated reasons form a pretext for...discrimination. "*Tyler v. Runyon,* 70 F.3d 458, 467 (7ᵗʰ Cir. 1995) (quotations omitted). "The plaintiff can accomplish this by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* "The plaintiff may show that the defendant's proffered reasons are incredible by showing that 1) they have no basis in fact,  2) they did not actually motivate the employer's decision, or 3)

they were insufficient to motivate the discharge." *Samuelson v. Durkee*, 976 F.2d 1111,1114 (7th Cir. 1992). Here, Keys fails to meet the requirements under the *McDonnell-Douglas* analysis. Further Keys fails to establish that Foamex's reason for his termination was a pretext for discrimination. Keys fails to show that a discriminatory purpose more likely than not motivated the employer's decision to terminate him.

### CONCLUSION

Based on the foregoing reasons, Foamex's Motion for Summary Judgment is hereby GRANTED.

Entered: August 12, 2005.

s/ William C.  Lee
William C. Lee, Judge
United States District Court